UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES

        Plaintiff,

                                Case No. 04-80647

v.

                                Honorable Patrick J. Duggan

JOHN DAVID PRESLEY,

        Defendant.
_____/

**OPINION AND ORDER**

      Presently before the Court is a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 filed by Defendant John David Presley ("Presley") on October 25, 2010. Presley challenges his conviction in 2006 for one count of conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846. In his motion, Presley alleges that he received ineffective assistance of counsel during his trial. The Government filed a response to the motion on November 30, 2010; Presley filed a reply brief on January 5, 2011. For the reasons set forth below, the Court finds no merit to the majority of Presley's claims regarding the effective assistance of his trial counsel but concludes that an evidentiary hearing is necessary to address one of his claims.

**I.    Trial Evidence and Procedural Background**

      This case arises out of Presley's use of drivers working for his trucking company to transport marijuana. Presley hired these drivers as independent contractors and paid

them twenty-five percent of the money Presley earned to transport goods across the United States. Typically Presley's drivers transported dry goods from the east coast to the west coast and, after delivering their load, picked up produce to transport from the west coast to the east coast. On several occasions, the drivers added marijuana to their return loads of produce.

In April 2002, Presley hired driver Stanley Eason. At some time late in 2002, Eason began transporting marijuana for Presley on his return trips from the west coast. Presley arranged for Eason to meet individuals in Arizona, where the marijuana would be loaded into his truck, and then Eason would deliver the marijuana to Presley's truck yard in Detroit. On Eason's fourth trip transporting marijuana for Presley, he was stopped by authorities in Missouri. Eason told the authorities that the 490 kilograms of marijuana found in his truck was intended for Presley.

In October 2001, Presley hired driver Alvin Jackson. In or around December 2003, Jackson agreed to transport marijuana for Presley. On January 4, 2004, during his first trip doing so, Jackson was stopped by police in Missouri. 242 kilograms of marijuana were seized from Jackson's truck and Jackson was arrested. Jackson agreed to cooperate with the police and Drug Enforcement Agency ("DEA") Agent Steven Tenprano was brought into the case. Tenprano decided to attempt a controlled delivery of the marijuana and he instructed Jackson to call Presley and tell him that he was on his way back to Detroit with the load.

When Jackson called, Presley told him that the truck yard was too full of snow and that Jackson should drive the truck to Jackson's uncle's house, where Jackson sometimes

parked the truck when it was empty. Jackson drove the truck to his uncle's house and waited for Presley to arrive. Two DEA agents were in the truck with him. After several hours, at around 10:30 p.m., three pickup trucks with Colorado license plates circled the block where the truck was parked. Wayne County Sheriffs stopped one of the trucks and identified the occupants as a Mr. Miller and Mr. Hocardin Rasheed.

At around 10:40 p.m. Jackson spoke with Presley by phone. Presley indicated that he needed to get the produce that was in Jackson's truck, but he still needed to clear the snow from the lot, was not feeling well, and might need to go to the hospital. At 11:20 p.m., Presley and Jackson spoke again and Presley told Jackson that he would clear the lot. In the meantime, however, at around 11:00 p.m. the agents concluded that Presley was not going to come to the location of Jackson's uncle's house and so they ended the controlled delivery attempt.

The following day, the officers arrested Presley. When they took Presley into custody, he was in possession of an organizer that contained the name "Rasheed" and a phone number for that individual.

On July 28, 2004, Presley was indicted on the charge of conspiracy to distribute 100 or more kilograms of marijuana. A jury trial commenced on October 24, 2006, and concluded on October 25, 2006. The Government called only Eason, Jackson, and Tenprano as witnesses. Presley's wife, Carol, was the only defense witness. At the trial, Eason and Jackson denied knowing or ever meeting one another.

At the conclusion of the trial, the jury found Presley guilty as charged. The jury made a specific finding beyond a reasonable doubt that the amount of marijuana involved

was at least 100 kilograms. On April 19, 2007, this Court sentenced Presley to a term of imprisonment of 151 months. Attorney Gerald Evelyn represented Presley at trial and sentencing.

On April 27, 2007, with the assistance of new counsel, Presley filed a timely notice of appeal. On appeal, Presley raised the following claims: (1) that the prosecutor improperly vouched for Eason's and Jackson's credibility by eliciting testimony regarding their agreements with the Government in exchange for their testimony; (2) a violation of his rights under the Confrontation Clause based on the admission of hearsay through Tenprano's testimony; (3) a violation of his due process rights based on the trial court's instructions regarding Eason's and Jackson's testimony; (4) sentencing errors; (5) ineffective assistance of counsel; and (6) cumulative error. *See United States v. Presley*, 349 Fed. App'x 22 (6th Cir. 2009). Appellate counsel waived Presley's ineffective counsel claim at oral argument. *Id.* at 10.

In a decision filed on October 13, 2009, the Sixth Circuit found merit to Presley's challenge to his sentence but rejected his remaining claims. *Presley*, 249 Fed. App'x 22. With respect to his sentence, the Sixth Circuit found that this Court relied on an improperly calculated Guidelines range to sentence Presley and therefore the appellate court vacated the sentence and remanded for resentencing. *Id.* at 31. On January 27, 2010, this Court resentenced Presley to a term of imprisonment of 80 months.

On October 26, 2010, Defendant filed the pending motion pursuant to § 2255. In his motion, Defendant claims that he received ineffective assistance of counsel at trial based on the following:

4

>(1) counsel's failure to object to evidence of Eason's and Jackson's agreements with the Government and to request a limiting instruction with respect to Eason's and Jackson's testimony;
>
>(2) counsel's failure to object to and seek a curative instruction with respect to improper vouching by the prosecutor, that being the elicitation of Eason's testimony that he received a reduced sentence before Presley's trial based on his agreement to testify truthfully at the trial;
>
>(3) counsel's failure to object to inadmissible hearsay, that being Tenprano's testimony revealing the identity of Hocardin Rasheed;
>
>(4) counsel's failure to call two witnesses, Kirkland Moseley and Reginald Wilson, who defense counsel had interviewed and who Presley claims would have presented testimony helpful to his defense;
>
>(5) counsel's failure to object to a clear error in the presentence report, i.e. the incorrect Guidelines calculation that resulted in the Sixth Circuit vacating Presley's sentence; and
>
>(6) cumulative error.

Presley also asserts that trial counsel only met with him two days prior to trial "in attempt to ascertain [his] perspective as to the particulars of the case," failed to file any pretrial motions, and failed to apprise Presley of the 18 U.S.C. § 3553 sentencing factors and advocate for a lesser sentence.

## II.    Standards for Reviewing A § 2255 Motion and Ineffective Assistance of Counsel Claims

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (citing *United States v. Addonizio*, 442 U.S. 178, 185-86, 99 S. Ct. 2235 (1979)).

Ineffective assistance of counsel claims fall within the first of these three categories. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003).

"[C]ounsel's assistance is only *constitutionally* ineffective," however, "if it is both deficient and prejudicial." *English v. Romanowski*, 602 F.3d 714, 725 (6th Cir. 2010) (emphasis added) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052, 2064). The Supreme Court "ha[s] declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.*

Further, the Court has warned that when evaluating trial counsel's performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The *Strickland* Court provided the following rationale for why judicial scrutiny of trial counsel's performance must be "highly deferential":

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude

6

> that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id*. There is a distinction, however, between claims challenging the reasonableness of a defense attorney's investigation and those challenging a decision whether to present certain evidence. "[S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. In comparison, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 690-91, 104 S. Ct. at 2066.

With respect to *Strickland's* prejudice prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S. Ct. at 2064. In other words, "a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [the trial] would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *English*, 602 F.3d at 726 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

**III.   Application and Analysis**

    **A.   Evidence Regarding Eason's and Jackson's Agreements with the Government**

7

Presley contends that his trial counsel was ineffective in failing to object to evidence concerning Eason's and Jackson's agreements with the Government, which he claims constituted improper prosecutorial vouching, and counsel's failure to seek a curative instruction after this evidence was presented to the jury. The Sixth Circuit already has held that the prosecutor's elicitation of this evidence did not constitute improper vouching and that, therefore, a curative instruction was not required. *Presley*, 349 Fed. App'x at 27, 29-30. In evaluating Presley's claim, the court specifically considered Eason's testimony that, as a result of his cooperation, he already was sentenced to 54 months of incarceration as opposed to the 121 to 151 months he was facing. *Id*. at 25. The appellate court also considered and rejected Presley's claim that the jury should have been instructed that it could not assume defendant was guilty because Eason and Jackson pleaded guilty. *Id*. at 30.

Based on the Sixth Circuit's previous rejection of Presley's claims, this Court cannot find that trial counsel was ineffective as a result of his failure to object to the introduction of evidence concerning Eason's and Jackson's agreements and to request an instruction limiting how this evidence could be considered by the jury. Presley therefore is not entitled to relief based on these claims.

### B. Inadmissible Hearsay

Presley next claims that his trial counsel was ineffective in failing to object to the Government's elicitation of inadmissible hearsay during Tenprano's testimony concerning the identity of Hocardin Rasheed. Presley argues that defense counsel also should have objected to Tenprano's testimony that Hocardin Rasheed and the Rasheed in Presley's organizer were the same person where there was no corroborating evidence.

As with Presley's previous claims, he challenged the admission of hearsay evidence concerning Rasheed's identity on direct appeal and the Sixth Circuit rejected his challenge. *Presley*, 349 Fed. App'x at 28. Although the appellate court reviewed Presley's claim for plain error because there was no contemporaneous objection, the court also considered the merit of his claim if there had been an objection:

> Here, defense counsel did not object to the admission of Agent Tenprano's testimony. *But even if he had*, the prosecutor could have easily called the Wayne County Sheriff to testify as to what happened during the controlled delivery attempt, and the outcome of the trial would have been the same. Knowing this, defense counsel likely made a strategic decision not to object to the admission of the hearsay testimony by Agent Tenprano.

*Id*. (emphasis added). Moreover, rather than drawing attention to Tenprano's testimony that the two Rasheeds were the same person and risking the chance that the agent could provide an explanation for why he reached that conclusion, defense counsel waited until closing argument to argue that there is no evidence other than speculation to establish that fact. (10/25/06 Trial Tr. at 33.)

For these reasons, the Court finds no merit to Presley's ineffective assistance of counsel claim premised on the introduction of inadmissible hearsay and trial counsel's

9

failure to object to Tenprano's testimony that the Rasheed listed in Presley's organizer was the same individual stopped by the Wayne County Sheriff at the time of the attempted controlled delivery. Presley therefore is not entitled to relief based on this claim.

### C.    Incorrect Guidelines Calculation

Presley claims that his trial counsel was ineffective in failing to object to an error in his Presentence Investigation Report and thereafter failing to object to a resulting incorrect Sentencing Guidelines calculation. As the Sixth Circuit described this error on direct appeal: "The Presentence Investigation Report ("PSR") noted the base offense level was 28 for 'offenses involving at least 400, but less than 700 kilograms of marijuana.' However, in the right hand column of the PSR, the base offense level was noted as 30." *Presley*, 349 Fed. App'x at 31. As a result of this error, Presley's guideline range was calculated as 151 to 188 months instead of 121 to 151 months. *Id.*

Presley concedes that the incorrect Guidelines calculation was adjudicated on direct appeal; however, he argues that counsel's failure to object to the error should be considered in evaluating whether counsel's performance in the cumulative was constitutionally ineffective. Agreeing that there was an error, the Sixth Circuit vacated Presley's sentence and remanded for resentencing. As a result, it cannot be said that any error by trial counsel has prejudiced Presley. Moreover, the Court notes with respect to the performance prong that the prosecutor and this Court apparently also overlooked this error.

The Court therefore concludes that Presley is not entitled to relief based on this

claim.

### D. Failure to Call Witnesses and Introduce Evidence

Presley alleges that his trial counsel was ineffective as a result of his failure to call Kirkland Moseley and Reginald Wilson as witnesses. Presley also alleges that his trial counsel was ineffective due to his failure to introduce evidence concerning Jackson's cash purchase of a new automobile on July 31, 2003. As to Moseley and Wilson, Presley claims that his attorney interviewed both individuals at his direction and that they would have provided testimony favorable to his defense. Additionally, Presley claims that Moseley's and Wilson's contemplated testimony and evidence of Jackson's automobile purchase would have discredited Alvin and Jackson.

In an affidavit submitted in support of Presley's motion, Moseley states that he was employed by Presley as a truck driver during a period overlapping Jackson's and Eason's employment, that he is familiar with Eason and Jackson, and that Eason and Jackson were personally acquainted. (Mot. Ex. A. ¶¶ 2-5.)) Moseley further states that he saw Eason and Jackson together on more than one occasion and that he "participated in a collective, face to face dialogue with drivers Stanley Eason and Alvin Jackson in the time frame immediately preceding Stanley's Eason's arrest [i.e. around April 1, 2003]." (*Id*. ¶¶ 6-7.) According to Moseley, he provided this information to Presley's trial counsel prior to Presley's trial. (*id*. ¶¶ 8-9.)

Presley also attaches to his motion interview notes purportedly taken by his trial counsel while interviewing Wilson. (Mot. Ex. B.) These notes reflect that Wilson also worked for Presley during a period when Eason and Jackson worked for him. (*Id*.)

11

Wilson met Eason and Jackson during his employment and "bumped into" Jackson at a Circle K truck stop in the Summer of 2003. (*Id.*) The notes indicate that Jackson asked Wilson if he "want[ed] to make some real money" and told Wilson that he is "moving this bud", that he "would take the load to his peeps . . .." (*Id.*) Apparently Jackson told Wilson, "John [Presley] don't know about what I'm doing." (*Id.*) Counsel wrote: "Bought new Cadillac" and "2 seat Mazda [within] few months", although the notes fail to indicate to whom Wilson was referring.

A Vehicle Purchase Order attached to Presley's motion indicates, however, that Jackson purchased a new 2003 Nissan two-door 350z on July 31, 2003. (Mot. Ex. E.) The Vehicle Purchase Order also reflects that the car cost $40,000 and the receipt shows that Jackson paid $39,995 in cash. (*Id.*) Jackson purchased the automobile a few months before he was arrested transporting marijuana for Presley allegedly for the first time.

Presley argues in his motion that Moseley's testimony would have directly contradicted Eason's and Jackson's claim that they did not know each other and that they were transporting marijuana at Presley's direction. Specifically, Presley writes:

> Such testimony [i.e. that Eason and Jackson had never seen each other before and did not know each other] was ostensibly adduced in effort to illustrate that the witnesses' modus operandi for the transportation of the contemplated marijuana, although similar, was independent of one another and established solely at the discretion of [Presley]. Said testimony was also exacted in effort to preclude [Presley] from asserting that Eason and Jackson utilized the "cover" of [Presley]'s trucking company to conspire to transport and distribute marijuana exclusive of Petitioner.

(Mot. at 19.) Wilson's testimony, Presley argues, would have established that Jackson was not transporting marijuana for Presley, that Presley did not know about Jackson's

12

illegal activities, and that Jackson most likely was transporting marijuana for some period before he was caught in January 2004, as he had $40,000 in cash to purchase a new car several months earlier.

The Government in fact relied heavily on Eason's and Jackson's testimony that they did not know each other to negate any finding that they were working independent of Presley and to establish Presley's guilt. In his closing argument, the prosecutor argued:

> In assessing their [Jackson's and Eason's] credibility, the first thing to note is that they did not know each other. There's absolutely no evidence that the two of them ever spent any time together or talked to each other, ever had anything to do with each other apart from employment with Mr. Presley who is the only common denominator between them.
>
> Now, if you were in the gambling sort of mode, you might ask what are the odds that in a ten-month period two drivers who didn't know each other would be stopped driving J&C trucks which are the defendant's trucks. Those trucks would be carrying quantities of marijuana from Arizona to Detroit and that the defendant had nothing to do with it. I guess that just simply defies the odds. It defies common sense.
>
> As I mentioned before the only common connecter between those two is him.
>
> . . . Again, what are the odds though that two people independent of each other would come up with the same lie? Both of these people remember when they were stopped said, where is it going? It's going to Presley. Both of them. It again defies the odds that both of them would independently come up with the same story.

(10/25/06 Trial Tr. at 9-10.) The prosecutor specifically drew the jury's attention to the absence of evidence showing that Jackson and Eason knew each other. (*See id* at 10-11.)

In his closing argument, defense counsel argued that Jackson and Eason must have known each other and were using Presley as a cover for their illegal activities which they may or may not have been engaged in for the same person. (*See id*. at 23-29.) Moseley's

13

and Wilson's testimony would have provided what appears to be persuasive evidence to support defense counsel's arguments. The Court also believes evidence showing that Jackson purchased a new $40,000 car with cash in July 2003, likely would have undermined his testimony that the first time he transported marijuana was in January 2004, after Presley asked him if he wanted to earn more money.

For these reasons, the Court finds a reasonable probability that the introduction of this evidence would have resulted in a different outcome in Presley's trial. Thus Presley satisfies *Strickland's* prejudice prong. The Court, however, cannot determine absent an evidentiary hearing whether *Strickland's* deficiency prong is satisfied in this case.

After interviewing Moseley and Wilson, counsel apparently made the decision not to call them as witnesses at Presley's trial. Counsel's reason(s) for this decision, however, is not evident from the record. It also is not evident from the record why counsel did not attempt to introduce evidence concerning Jackson's car purchase.[1] It may well be that, under the circumstances at the time of trial, defense counsel made a reasonable decision not to present this evidence. *See English*, 602 F.3d at 726. But absent an evidentiary hearing, this Court cannot make that determination.

The Government in response to Presley's motion speculates that counsel chose not to call Wilson because of his 1991 arson conviction which is reflected in counsel's interview notes. (Mot. Ex. B.) There is no evidence in the record, however, to conclude

---

[1] The Court is uncertain whether counsel in fact obtained a copy of the Vehicle Purchase Order prior to trial. The notes from Wilson's interview indicate that defense counsel was informed of the purchase (*see* Mot. Ex. B); but the record fails to reveal what, if anything, defense counsel did with this information.

14

that this was defense counsel's reason.  Further, it does not explain why counsel decided not to call Moseley as a witness or present evidence regarding Jackson's car purchase. Moreover, the Court notes that the only evidence linking Presley to the seized marijuana is Eason's and Jackson's testimony and Eason also had a prior felony conviction. Eason's conviction (also in 1991) was for possession with intent to distribute cocaine. (10/24/06 Trial Tr. at 52.)  The Court is not certain whether a reasonable defense attorney would refrain from calling a witness possessing Wilson's information due to a fifteen year-old arson conviction when one of the only two Government witnesses identifying Presley as the intended recipient of the marijuana himself had a prior conviction for drug dealing.

Accordingly, the Court is withholding judgment with respect to Presley's ineffective assistance of counsel claim based on the failure to present Moseley and Wilson as witnesses and to present evidence with respect to Jackson's automobile purchase.

### E.     Remaining Arguments

Within the above arguments, Presley also asserts that his trial counsel was deficient in failing to (1) conduct independent pre-trial investigation, (2) file substantive pre-trial motions, (3) introduce impeachment evidence, and (4) apprise him of the 18 U.S.C. § 3553 sentencing factors and advocate for a lesser sentence in accordance with those factors.  Presley, however, fails to identify evidence not uncovered by the investigation counsel did conduct, what pre-trial motions should have been filed, or what factors should have been presented to advocate for a lower sentence.  Aside from the

15

evidence already addressed, Presley identifies no impeachment evidence that defense counsel should have used.

Presley also argues that he received ineffective assistance at trial due to counsel's cumulative errors. The Court, however, finds only one potential error. Thus it finds no merit to Presley's cumulative error argument.

## IV.  Summary

For the reasons set forth above, the Court concludes that Presley sets forth only one potential claim for finding that his trial counsel provided ineffective assistance: his claim based on counsel's failure to call Moseley and/or Wilson as witnesses and to present evidence related to Jackson's cash purchase of an automobile in July 2003. An evidentiary hearing is needed to develop the factual record necessary to adjudicate this claim. Pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, a court must appoint an attorney to represent a defendant when an evidentiary hearing is warranted.

Accordingly,

**IT IS ORDERED**, that the Court grants Defendant John Presley an evidentiary hearing to assess his claim that his trial counsel provided ineffective assistance of counsel due to his failure to call Kirkland Moseley and Reginald Wilson as witnesses and to present evidence concerning Government witness Alvin Jackson's cash purchase of a new automobile in July 2003;

**IT IS FURTHER ORDERED**, that an evidentiary hearing to address this claim is scheduled for May 10, 2011, at 2:00 p.m.;

16


**IT IS FURTHER ORDERED**, that Defendant John Presley's remaining basis for claiming ineffective assistance of trial counsel are denied;

**IT IS FURTHER ORDERED**, that the Court appoints the Federal Defender's Office to represent Defendant John Presley.

Dated: February 23, 2011                    s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
John D. Presley, #01813-039
FCI Ashland
Federal Correctional Institution
P.O. Box 6001
Ashland, KY  41105-6001

AUSA Michael C. Leibson