UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES

        Plaintiff,

                               Case No. 04-80647

v.

                               Honorable Patrick J. Duggan

JOHN DAVID PRESLEY,

        Defendant.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND (2) DENYING AS MOOT DEFENDANT'S MOTION FOR BOND

On October 25, 2010, Defendant John David Presley filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Doc. 60.) Asserting ineffective assistance of trial counsel, Mr. Presley challenges his conviction in 2006 for one count of conspiracy to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846. In his motion, Mr. Presley identifies five "errors" by his trial counsel. In an opinion and order issued February 23, 2011, this Court found no merit to most of the errors claimed by Mr. Presley but concluded that an evidentiary hearing was necessary to address his claim that his trial counsel was ineffective as a result of his failure to present two witnesses. (Doc. 66.) After appointing counsel to represent Mr. Presley, the Court held an evidentiary hearing on June 9, 2011. On the day of the hearing, Mr. Presley also filed a motion for bond pending a decision on his § 2255 motion. (Doc. 69.)

For the reasons that follow, the Court grants Mr. Presley's § 2255 motion and denies as moot his motion for bond.

## Applicable Law

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI. This right, the Supreme Court has explained, is "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 2045 (1984). "When a true adversarial criminal trial has been conducted– even if defense counsel may have made demonstrable errors– the kind of testing envisioned by the Sixth Amendment has occurred." *Id*.

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To satisfy this standard and demonstrate that counsel's assistance was *constitutionally* ineffective, "the petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

"To demonstrate deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Id*. (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). The Supreme Court "ha[s] declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that 'the proper measure of attorney performance remains simply

2

reasonableness under prevailing professional norms.'" *Id*.  The Court has advised that "the type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole– specific errors and omissions may be the focus of a claim of ineffective assistance as well." *Cronic*, 466 U.S. at 657 n.20, 104 S. Ct. at 2046 n.20 (citing *Strickland v. Washington*, 466 U.S. at 693-696, 104 S. Ct. at 2067-2069).  However, for an isolated error to support an ineffective assistance claim, the error must be "sufficiently egregious and prejudicial."  *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986).

A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. "[S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallen  geable."  *Id*. at 690, 104 S. Ct. 2066.  Decisions based on mistaken beliefs regarding the evidence and/or law, however, are neither strategic nor tactical.  *See Kimmelman v. Morrison*, 477 U.S. 365, 383-87, 106 S. Ct. 2574 (1986) (finding that a failure to file a motion to suppress based on a lack of knowledge of the state of the evidence due to counsel's misunderstanding or ignorance of the law or failure to conduct adequate investigations can satisfy *Strickland*'s deficiency prong); *Green v. Nelson*, 595 F.3d 1245 (11th Cir.), *cert. denied* 131 S. Ct. 827 (2010) (finding that counsel rendered constitutionally deficient performance in failing to file a

motion to suppress evidence where the decision was not the result of a strategic decision-making process but rather of inaction resulting from an admittedly mistaken view of the evidence in the case); *United States v. Span*, 75 F.3d 1383, (9th Cir. 1996) (finding that counsel's performance was deficient where errors regarding jury instructions were not a strategic decision but the result of counsel's misunderstanding of the law).

With respect to *Strickland*'s prejudice prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trail, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [the trial] would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

## Background

As set forth in more detail in the Court's opinion and order of February 23, 2011, Mr. Presley's conviction arises from his use of drivers working for his trucking company to transport marijuana during their return trips from the west coast. When authorities separately stopped two of those drivers while they were transporting a total of 732 kilograms of marijuana, the drivers indicated that the marijuana was intended for Mr. Presley.

On July 28, 2004, Mr. Presley was indicted on the charge of conspiracy to distribute 100 or more kilograms of marijuana. A jury trial commenced on October 24,

2006, and concluded the following day with the jury finding Mr. Presley guilty as charged. Criminal defense attorney Gerald Evelyn represented Mr. Presley prior to and at trial. The government called three witnesses at trial: Stanley Eason and Alvin Jackson– the two drivers caught by authorities– and Drug Enforcement Agent Steven Tenprano. Mr. Presley's wife, Carol Presley, was the only defense witness.

Mr. Eason testified at trial that he was hired by Mr. Presley in April 2002, and began transporting marijuana for Mr. Presley some time later that year. Mr. Jackson testified that he was hired by Mr. Presley in October 2001. According to Mr. Jackson, he agreed to transport marijuana for Mr. Presley in or around December 2003 because he needed the money. On January 4, 2004, Mr. Jackson was stopped by authorities in Missouri during what he claimed was his first trip transporting marijuana for Mr. Presley.

At trial, Mr. Eason and Mr. Jackson denied knowing or ever meeting one another. The prosecutor relied heavily on this testimony to negate any finding that Mr. Eason and Mr. Jackson were working independently of Mr. Presley and to establish Mr. Presley's guilt. Aside from Mr. Eason's and Mr. Jackson's testimony, there was no evidence linking Mr. Presley to the marijuana and/or illegal drug activity.

In his closing argument, Mr. Evelyn argued that Mr. Jackson and Mr. Eason must have known each other and were using Mr. Presley as a cover for their illegal activities which they may or may not have been engaged in for the same person.

In his § 2255 motion, Mr. Presley argues that his trial counsel was ineffective as a result of his failure to call two witnesses, Kirkland Moseley and Reginald Wilson, who he

5

2:04-cr-80647-PJD-SDP   Doc # 70   Filed 08/16/11   Pg 6 of 14   Pg ID 487

contends would have presented testimony discrediting Mr. Jackson's and Mr. Eason's testimony, including their claim that they did not know each other. Mr. Evelyn interviewed Mr. Moseley and Mr. Wilson prior to trial. To support his § 2255 motion, Mr. Presley presents an affidavit from Mr. Moseley and notes taken by Mr. Evelyn while interviewing Mr. Wilson. Mr. Presley also submits evidence supporting information Mr. Wilson conveyed to Mr. Evelyn during their pretrial meeting.

In his affidavit submitted in support of Mr. Presley's motion, Mr. Moseley states that Mr. Presley employed him as a truck driver during a period overlapping Mr. Jackson's and Mr. Eason's employment, that he is familiar with Mr. Eason and Mr. Jackson, and that Mr. Eason and Mr. Jackson were personally acquainted. (Doc. 60 Ex. A.) Mr. Moseley further attests that he saw Mr. Eason and Mr. Jackson together on more than one occasion and that he "participated in a collective, face to face dialogue with drivers Stanley Eason and Alvin Mr. Jackson in the time frame immediately preceding Stanley Eason's arrest [i.e., around April 1, 2003]." (*Id.* ¶¶ 6, 7.) Mr. Moseley claims that he shared this information with Mr. Evelyn prior to Mr. Presley's trial. (*Id.* ¶ 9.)

Mr. Evelyn's notes from his interview with Mr. Wilson reflect that Mr. Wilson also worked for Mr. Presley during a period overlapping Mr. Eason's and Mr. Jackson's employment. (Doc. 60 Ex. B.) The notes further reflect that Mr. Wilson met Mr. Eason and Mr. Jackson during his employment and "bumped into" Mr. Jackson at a Circle K truck stop in the Summer of 2003. (*Id.*) The notes indicate that during this encounter, Mr. Jackson asked Mr. Wilson if he "want[ed] to make some real money" and told Mr.

Wilson that he is "moving this bud," that he "would take the load to his peeps . . ., and that "John [Presley] don't know about what I'm doing." (*Id.*)  Mr. Evelyn also wrote: "[b]ought new Cadillac" and "2 seat Mazda [within] few months." (*Id.*)

In support of his § 2255 motion, Mr. Presley also offers a Vehicle Purchase Order reflecting that Mr. Jackson in fact bought a new 2003 Nissan two-door 350z on July 31, 2003.  (Doc. 60 Ex. E.) The Vehicle Purchase Order further reflects that the car cost $40,000 and that Mr. Jackson paid $39,995 in cash.  (*Id.*)  As noted in this Court's February 23, 2011 decision, it was not evident from Mr. Presley's motion whether Mr. Evelyn obtained a copy of the Vehicle Purchase Order prior to trial.  (Doc. 66 at 14 n.1.)

In that decision, the Court found a reasonable probability that a different outcome in Mr. Presley's trial would have resulted from the introduction of the above evidence (i.e., Mr. Moseley's and Mr. Wilson's testimony and the Vehicle Purchase Order).  (*Id.* at 12-14.) As such, the Court held that Mr. Presley satisfied the prejudice prong of the *Strickland* analysis.  (*Id.*)  The Court further concluded, however, that without an evidentiary hearing it could not assess whether Mr. Presley satisfied *Strickland*'s deficiency prong as counsel's reason(s) for not presenting the evidence was not evident from the record.  (*Id.*)

The Court therefore scheduled an evidentiary hearing and, in accordance with Rule 8(c) of the Rules Governing Section 2255 Proceedings, appointed counsel to represent Mr. Presley.  As indicated earlier, an evidentiary hearing was held on June 9, 2011.

**Evidentiary Hearing**

7

Mr. Presley presented two witnesses at the evidentiary hearing: Mr. Moseley and Mr. Evelyn.

Mr. Moseley testified that he worked for Mr. Presley as a truck driver from the end of 2001 until 2005.  Mr. Moseley further testified that he was familiar with Mr. Jackson and Mr. Eason because they "hauled out the same route, we came back the same route . . . we would run into each other every now and then." (6/9/11 Tr.)  According to Mr. Moseley, Mr. Jackson and Mr. Eason knew each other and he recalled two specific locations along his route where he saw Mr. Jackson and Mr. Eason together.  (*Id.*)

Mr. Moseley testified that he provided this information to Mr. Evelyn before Mr. Presley's trial.  According to Mr. Moseley, Mr. Evelyn said that he would not be using Mr. Moseley as a witness because of his prior felony convictions.  Mr. Moseley reported that these convictions included a 1993 conviction for assault with intent to murder and a 1991 conviction for "receiving and concealing."  (*Id.*)

Mr. Evelyn testified that he recalled meeting with Mr. Moseley prior to Mr. Presley's trial and that Mr. Moseley told him about "two encounters that he had where he said he observed Mr. Jackson and Mr. Eason at some truck stops."  (*Id.*)  Mr. Evelyn also recalled meeting with Mr. Wilson, indicating that this meeting was lengthier than his meeting with Mr. Moseley because Mr. Wilson provided more information "that was going to purportedly help Mr. Presley."  (*Id.*)

According to Mr. Evelyn, Mr. Wilson told him that Mr. Eason and Mr. Jackson knew each other and that Mr. Jackson approached Mr. Wilson at a truck stop and

indicated that he was "running bud."  (*Id.*)  Mr. Wilson also told Mr. Evelyn that Mr. Jackson asked him if he was interested in selling marijuana and said that "Mr. Presley knows nothing about it."  (*Id.*)  Mr. Evelyn further recalled Mr. Wilson telling him about Mr. Jackson's purchase of a Cadillac or Nissan and indicated that he in fact received the Vehicle Purchase Order prior to Mr. Presley's trial reflecting Mr. Jackson's cash purchase of an automobile on July 31, 2003.  (*Id.*)

Mr. Evelyn testified that Mr. Presley wanted to call Mr. Wilson and Mr. Moseley as trial witnesses, but he advised against it.  Mr. Evelyn explained that, at the time of trial, he did not think they would be credible witnesses.  Mr. Evelyn suggested that Mr. Moseley's evidentiary hearing testimony concerning his observations of Mr. Eason's and Mr. Jackson's encounters was more elaborate or detailed than the information he provided to Mr. Evelyn during their pre-trial meeting.  Mr. Evelyn found Mr. Wilson's story "convenient."  Mr. Evelyn suggested during his testimony that he found Mr. Wilson's story "convenient" or hard to believe specifically because, after declining Mr. Jackson's offer to join his drug activities, Mr. Wilson failed to inform Mr. Presley that one of his drivers was transporting drugs on his runs when he knew that Mr. Presley had one truck seized by the government for drugs following Mr. Eason's earlier arrest.

When asked why he did not present evidence showing that Mr. Jackson paid cash for a vehicle about six months before he was arrested on what he claimed was his first trip transporting marijuana for Mr. Presley, Mr. Evelyn explained that he feared the introduction of the evidence would "open the door" to information harmful to Mr.

9

Presley.  According to Mr. Evelyn, he received documents from the government prior to

trial reflecting that in April 2003, Mr. Presley gave an automobile salesperson cash, the

salesperson took the cash to his credit union and converted it to a cashier's check, and

that the check then was used to pay for a vehicle.  Mr. Evelyn acknowledged that Mr.

Presley was not charged with a crime based on the transaction and that the prosecutor told

him that the government would not seek to introduce this evidence at Mr. Presley's trial.

Nevertheless, Mr. Evelyn believed that if he presented evidence regarding Mr. Jackson's

cash purchase, the prosecutor likely would bring up Mr. Presley's purchase in rebuttal.

### Analysis

Based on the testimony presented at the evidentiary hearing, this Court concludes

that Mr. Evelyn's decision to not present Mr. Moseley or Mr. Wilson as witnesses

constituted a strategic decision.  Nevertheless, "even deliberate trial tactics may constitute

ineffective assistance of counsel if they fall outside the wide range of professionally

competent assistance."  *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984) (internal

quotation marks and citation omitted); *see also English v. Romanowski*, 602 F.3d 714,

726 (6th Cir. 2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029

(2000) for the proposition that "even when making strategic decisions, counsel's conduct

must be reasonable.") The Court finds for the following reasons that, under the

circumstances, counsel's decision was not reasonable.

As stated earlier, aside from Mr. Jackson's and Mr. Eason's testimony, there was

no evidence presented at Mr. Presley's trial to connect him with illegal drug activity

10

and/or the marijuana seized from Mr. Jackson's or Mr. Eason's trucks.  Thus Mr. Jackson

and Mr. Eason were not run-of-the-mill witnesses; they were the government's key

witnesses.  As a result, Mr. Presley's conviction rested on their credibility.  The Supreme

Court and Sixth Circuit have recognized the severe prejudice to a defendant where

favorable impeachment evidence is withheld with respect to a witness who provides the

*only* damning evidence against the accused.  *See, e.g., Harris v. Lafler*, 553 F.3d 1028,

1033 (6th Cir. 2009) ("Considerable authority from the Supreme Court and [the Sixth

Circuit] indicates that a defendant suffers prejudice from the withholding of favorable

impeachment evidence when the prosecution's case hinges on the testimony of one

witness" and citing cases.)[1]  There was limited evidence otherwise available to Mr.

Evelyn to impeach Mr. Jackson's and Mr. Eason's testimony and no other evidence to

support counsel's theory that these individuals must have known one another.  Under

these circumstances, the Court concludes that trial counsel's decision not to present Mr.

Moseley and/or Mr. Wilson as witnesses to impeach Mr. Jackson and Mr. Eason was

unreasonable.

The significance of Mr. Jackson's and Mr. Eason's testimony to the government's

case further leads the Court to conclude that trial counsel rendered ineffective assistance

when he failed to introduce evidence that Mr. Jackson paid $40,000 in cash for a vehicle

---

[1]The Court recognizes that *Harris* and the cases cited therein involve *Brady* claims. However, the Court believes that the statements in those cases apply with considerable force to deciding whether counsel's decision in the present case was reasonable.

11

several months before he claimed to have made his first trip transporting drugs for Mr.

Presley.  Mr. Evelyn did not present this evidence because he concluded that it would

"open the door" to the government's introduction of evidence that Mr. Presley structured

the purchase of a vehicle during the same year in a manner suggesting that he was trying

to disguise that he was paying cash.  The Court finds that Mr. Evelyn was incorrect in his

analysis regarding the admissibility of evidence concerning Mr. Presley's automobile

purchase.  As a result, the Court concludes that counsel's decision to not present this

evidence was neither strategic nor tactical.  *See Green*, 595 F.3d at 1251 (explaining that

decisions based on mistaken beliefs regarding the evidence and/or law are neither

strategic nor tactical); *see also Washington v. Hofbauer*, 228 F.3d 689, 704-05 (6th Cir.

2000) (finding ineffective assistance of counsel based on counsel's failure to object to the

prosecutor's improper introduction of character evidence as a result of counsel's

misunderstanding of trial and evidence principles); *Span*, 75 F.3d at 1390 (finding

ineffective assistance of counsel based on counsel's errors with jury instructions resulting

from counsel's misunderstanding of the law).

As the Court stated in its February 23, 2011 opinion and order, there is a

reasonable probability that evidence of Mr. Jackson's almost $40,000 cash purchase of a

car in July 2003, would have undermined his testimony that the first time he transported

marijuana was in January 2004, because he needed the money.  This evidence would have

suggested that Mr. Jackson may have been involved in drug activity at least five months

before he claimed to have started transporting marijuana for Mr. Presley.  Defense

12

counsel argued during his closing argument that Mr. Jackson and Mr. Eason were using Mr. Presley as a cover for their illegal activities which they may or may not have been engaged in for the same person. (10/25/06 Trial Tr. at 23-29.) There was no evidence presented to the jury, however, to support the theory that Mr. Jackson and/or Mr. Eason were transporting marijuana independently of Mr. Presley. The vehicle purchase order would have provided such evidence.

In short, the Court concludes that trial counsel's failure to introduce testimony and documentary evidence that likely would have impeached the government's key witnesses and supported Mr. Presley's defense theory was unreasonable. Without this evidence, the government's case was not subjected to meaningful adversarial testing. Further, the Court is not satisfied that Mr. Presley was afforded a fair trial as a result.

## Conclusion

For the above reasons, the Court concludes that Mr. Presley has satisfied the performance prong of the *Strickland* analysis. He has established that his trial counsel's performance with respect to the decision whether to introduce critical evidence "fell below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064. Therefore, the Court holds that Mr. Presley is entitled to relief under § 2255. Having reached a decision on his § 2255 motion, the Court concludes that Mr. Presley's motion for bond pending a decision on his § 2255 motion is moot.

Accordingly,

13

**IT IS ORDERED**, that Defendant John Presley's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendant John Presley's motion for bond is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that Defendant John Presley's conviction for conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846 is **VACATED AND SET ASIDE** and Defendant shall be released from custody unless the government commences a new trial within 180 days of this Opinion and Order.

Date:  August 16, 2011                               s/PATRICK J. DUGGAN
                                                     UNITED STATES DISTRICT JUDGE

Copies to:
Michael Leibson, Esq.
Andrew Wise, Esq.

14